Opinion of the court delivered by
Judge Catron.
At the July term of the Warren circuit court, 1827, defendant was indicted for betting at a game of hazard, called thimbles. On the presentment is indorsed, “founded upon the information of John Spears, a witness sworn in open court, and sent to the grand jury.” To the presentment the defendant demurred, after a motion to quash had been overruled; the court also overruled the demurrer. The defendant then asked leave to plead to the presentment, without laying any grounds. This application the court also refused. We are told in the bill of exceptions, the defendant was sent before the grand ju *473 ry; for what purpose we are not informed. Nor is it stated he gave evidence to the jury.
1st. It is objected, that the clerk did not sign the in-dorsement upon the presentment; therefore there was no legal evidence that the witness (Spears) was sworn, and the presentment ought to have been quashed. The in-dorsement is made, as prescribed by the act of 1803, ch. 12. We must presume in favor of the legality of the proceedings of the court below. If the fact is not with the presumption, it rests on the defendant to show it by his sealed exceptions, which he has failed to do.
2d. It is insisted for the defendant, that the act of 1827, ch. 40, repeals all penalties against the defendant, who exhibited the thimbles; the latter penalties, instead of afine, being imprisonment, pillory and infamy. The case’of Roberts vs. the State, (2 Tenn. Rep.,) is relied upon. That affirmative statutes affecting the same subject matter, often repeal each other by implication, is true; but the test always is, did the legislature intend by the latter statute to repeal the former? If so, the courts of justice will not punish by force of the repealed act. Roberts, in 1813, was indicted and convicted for the crime of horse stealing, committed in 1801. By the act of 1799, the crime was capital. By the act of 1807, the offence was made punishable by branding, whipping, imprisonment, &c. That the act of 1807, repealed that of 1799, never was doubted. The general rule is, that subsequent statutes, which add accumulative penalties, or institute new modes of proceeding, do not repeal former penalties or methods of proceeding ordained by the statutes, without negative words. (6 Ba. Ab. 373. Where it is manifestly the intention of the legislature, that a subsequent act of assembly shall not control the provisions of a former act, the subsequent act shall not have such operation, even though the words taken strictly and gramatically, would repeal the former. (6 Ba. Ab. 385. It never entered into the mind of. the legislature, by the act of 1827, to repeal the previous laws to suppress gaming; but to render them more effectual by *474 adding accumulative penalties, was the avowed object Hence there is nothing in this objection, and which is the only plausible one to the correctness of the judgment below.
We order the judgment to be affirmed, and the defendant to be held in custody until the fine and costs be paid. The forfeitures for failing to appear will be set aside, against the defendant and his securities, upon their paying the costs of that proceeding. In the other four causes against the defendant, the judgments will be affirmed; they,being in substance the same with the one examined.
{Note. On motion for a reconsideration of this cause, on a subsequent day of the term, Judge Catron delivered the opinion of the court as follows:]
We are asked to set aside the judgment entered at a previous day of this term. 1st. Because it is alleged, that by the statute, placing is alone indictable. That defendant is only charged with betting, and therefore no offence is alleged that can be punished. By the act of 1803, ch. 12, and 1824, ch. 5, the substantial facts need only be alleged. The indictment charges that the defendant did gamble, hazard, and bet on a game of hazard and address, commonly called thimbles, and did hazard on said game bank notes and money. ■
The word gamble, is perhaps the most apt and substantial to convey the idea of unlawful play, that our language affords. It is inclusive, of hazarding and betting as well as playing. We think the offence well described, even were mere betting not subject to indictment, which we think it clearly is. That he who bets upon a game of hazard, is within the act of 1803, has not been a subject of doubt with the bench or bar within our knoweledge. So the legislature understood the construction'of the statute, as will be seen by the act of 1817, ch. 61, sec. 7, which imposed disqualification upon those who should be “convicted of gaming or betting, upon any game of hazard or address.”
*475 2d. It is insisted, defendant had a right, without laying any grounds, to plead to the indictment, after his demurrer was overruled. This is not the true rule in cases of misdemeanors. Grounds must be laid. (1 Chitty’s C. L. 432; 2 Hawk. P. C. ch. 31, sec. 7; Starkie’s Ev. 347, 8. The plea is not matter of right; (See 3 Hale, 257. Motion refused.
[After the final decision of this cause, it having been ascertained that arrangements had been made with defendant, by the attorney general, for the payment of the’ fines and costs, the plaintiiT in error moved to be discharged without either paying or giving security in court for the payment of the fines and costs, in the whole five causes.
Por the facts of these arrangements, the clerk was called upon to repor(; upon which the opinion of the court was delivered by Judge Peck, as follows:]
On the within report, the court are of opini’on, and so declare it, that the attorney general had no power over the final judgment of this court.
The fines assessed in each of the causes on affirmance of judgment, belonged to the State of Tennessee. To receive those fees, or to postpone the payment of them, or in any way to interfere without the assent of the court first had, was beyond any thing that belonged to the duty of the attorney general. The officers of court must learn where duty with them commences and ends.
The court will see- to the execution of her .judgments, and treat arrangements interfering with them as nullities or contempts, according to circumstances.
The arrangements of the attorney for the government, will be wholly disregarded, as far as respects the judgments, his own costs excepted. Other officers present may control their costs.
The necessity of delivering tins in writing, arises from the circumstance of the attorney for the State having left the court after his arrangements with Bennett.